**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| REBECCA BOWEN, | : | Case No. 3:18-cv-48 |
| Plaintiff, | : | |
| vs. | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Rebecca Bowen brings this case challenging the Social Security Administration's denial of her application for Supplemental Security Income. She applied for benefits on October 29, 2014, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Mark Hockensmith concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #6), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), and the administrative record (Doc. #5).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Hockensmith's non-disability decision.

## II.     Standard of Review

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to

support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III.  Background

When Plaintiff filed her application for benefits, she was fifty years old and was therefore considered a person "closely approaching advanced age" under Social Security Regulations. 20 C.F.R. § 416.963(d). She went to school through ninth grade—a "limited education." 20 C.F.R. § 416.964(b)(3).

#### A.  Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Hockensmith that she has back problems that affect her ability to stand and walk. Sometimes when she is standing or walking, her back gets so weak that she feels like she has to sit down or she will fall

down. (Doc. #5, *PageID* #88). She can sometimes stand for twenty minutes before she has to sit down; other times, she can only stand for five minutes. She believes that it is dependent on how much she has already done that day. *Id.* at 89.

Plaintiff had surgery to repair three hernias in August 2016. *Id.* at 90. She still has stabbing pains in her right side because of all the scar tissue that was cut out. *Id.* at 90-91. If she continues to have problems, her doctor told her he would use a needle to drain the area. *Id.* at 91.

Plaintiff experiences numbness and tingling in both hands—her left is worse than her right. *Id.* at 81. It happens daily but the frequency and length vary. Sometimes, if she shakes her hand, it will get better after just a minute. *Id.* When Plaintiff is driving, one of her hands will sometimes start to tingle and go numb and she'll have to drive with only her other hand. *Id.* at 80. She has trouble picking things up and holding on to things when her hand is numb. *Id.* at 83. She has medication but does not take it because she is worried about how it would interact with her other medication. *Id.* at 82. She also has braces that she is supposed to wear when she is sleeping. *Id*. But, she does not always wear them because it is difficult for her to sleep with them on.

Plaintiff has "a lot of issues with breathing." *Id.* at 92. She has had asthma since she was child. *Id.* at 93. She sometimes starts to cough uncontrollably and coughs up phlegm with "something dark in it." *Id.* She has an inhaler that she uses depending on how she is feeling. *Id.* at 93-94.

4

She has stage-three kidney disease. *Id.* at 98. She has to use the bathroom more frequently: "quite often, I do go at least once an hour." *Id.* at 99. She had not seen a specialist but was scheduled to see one in the month after the hearing. *Id.* at 98.

Plaintiff struggles with fatigue. She takes a nap almost every day—sometimes two. *Id.* at 94. Some days, she feels okay is able to go see her doctors, wash a dish, or make a hamburger. *Id.* at 94-95. She sometimes has chest pains associated with stress. *Id.* at 96.

**B.     Medical Opinions**

**i.     Harold M. Brown, M.D.**

Plaintiff's treating physician, Dr. Brown, completed a basic medical questionnaire on October 22, 2015. *Id.* at 458-59. He diagnosed eleven medical conditions: uncontrolled hypertension; morbid obesity; left-hand paresthesia; anxiety; asthma; dyspnea on exertion; degenerative joint disease of thoracic spine; right-knee pain; midline low-back pain without sciatica; hyperlipidemia, and stage-two chronic kidney disease. *Id.* at 458. Dr. Brown opined Plaintiff's prognosis was poor but stable. *Id.* She could stand/walk for fifteen minutes at a time for a total of fifteen minutes in an eight-hour day, could sit for fifteen minutes, and could not lift/carry any weight. *Id.* at 459. Dr. Brown concluded, "She is unable to sit, stand, lift, twist, climb, bend, stoop or crawl and is considered temporarily totally disabled, and may ultimately be considered totally, permanently disabled. She cannot perform work of any kind at this time …." *Id.*

### ii. Amita Oza, M.D.

Dr. Oza examined Plaintiff on December 29, 2014. *Id.* at 443-48. She noted that Plaintiff had decreased breath sounds at the bases of her lungs and prolonged expiratory phase. *Id.* at 448. Upon examination, Dr. Oza found Plaintiff had "tenderness on palpation of lower lumbar spine," and "[r]ange of motion at hips towards extremes caused her to have some discomfort." *Id.* She opined Plaintiff could perform sedentary work with a change in position every fifteen to thirty minutes. *Id.*

## IV. The ALJ's Decision

As noted previously, it fell to ALJ Hockensmith to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since October 29, 2014.

Step 2: She has the severe impairments of degenerative disc disease, left-hand paresthesia, asthma, obesity, dysthymia, anxiety, and somatoform disorder.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … with the following additional limitations: (1) no climbing of ladders, ropes and scaffolds; (2) frequent climbing of ramps and stairs; (3) frequent balancing, stooping, kneeling, crouching and crawling; (4) frequent handling and fingering with the left upper extremity; (5) avoid concentrated exposure to temperature extremes; (6) avoid concentrated exposure to

6

> fumes, dusts, gases, odors and poorly ventilated areas; (7) no work at unprotected heights or with dangerous machinery; (8) limited to simple, routine, repetitive tasks; (9) in a static work environment with few changes in routine; (10) no fast paced work or strict production quotas; and (11) occasional contact with the public, coworkers and supervisors."

Step 4: She is unable to perform any of her past relevant work.

Step 5: She could perform a significant number of jobs that exist in the national economy.

(Doc. #5, *PageID* #s 52-64). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 64.

## V. Discussion

Plaintiff contends that the ALJ erred in evaluating the medical source opinions and failed to adequately consider Plaintiff's obesity. The Commissioner maintains that substantial evidence supports both the ALJ's evaluation of the medical opinions and his consideration of Plaintiff's obesity

### A. Medical Opinions

Social Security Regulations recognize several different categories of medical sources: treating physicians, nontreating yet examining physicians, and nontreating yet record-reviewing physicians. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment

7

> relationship (a "nontreating source"). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."

*Id.* (quoting in part Soc. Sec. R. 96-6p, 1996 WL 374180, *2 (Soc. Sec. Admin. July 2, 1996), and citing 20 C.F.R. §§ 404.1502, 404.1527(c)(1)-(2)).

Regardless of its source, the Regulations require an ALJ to consider and evaluate every medical opinion in the record. *See* 20 C.F.R. §§ 416.927(b), (c). In deciding what weight to assign an opinion, an ALJ must consider the following factors: examining relationship; treatment relationship; supportability; consistency; specialization; and other factors. *Id.* at (c). "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us." *Id.* at (e)(2)(ii).

ALJ Hockensmith assigned Dr. Brown's opinion little weight and provided two primary reasons. First, the ALJ reasonably discounted Dr. Brown's opinion based on his limited treatment history with Plaintiff. (Doc. #5, *PageID* #61); *see* 20 C.F.R. § 416.927(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). Dr. Brown began treating Plaintiff on the same day he completed his opinion. (Doc. #5, *PageID* #s 61, 1104). Although Dr. Brown eventually

8

became Plaintiff's treating physician, at the time he completed the assessment, he had only examined Plaintiff once. *See Blakley,* 581 F.3d at 407 ("A physician is a treating source if he has provided medical treatment or evaluation and has had an ongoing treatment relationship with the claimant… 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation [that is] typical for the [treated condition(s)].'") (quoting 20 C.F.R. § 404.1502) (alterations in original).

The ALJ also reasonably discounted Dr. Brown's opinions because, "there is no support in the record for Dr. Brown's assertion that the claimant is unable to lift and can only sit/stand/walk for 15 minutes." (Doc. #5, *PageID* #61); *see* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the Social Security Administration] will give that opinion."). Previously in his decision, the ALJ recognized that Plaintiff's degenerative disc disease, left-hand paresthesia, and asthma limit her ability to perform some work-related functions. (Doc. #5, *PageID* #54). However, these impairments do not support the extreme limitations opined by Dr. Brown.

For instance, looking at Plaintiff's back pain, the ALJ recognized that she reported chronic back pain, pain in her feet, and weakness. He acknowledged that medical notes revealed tenderness to palpation of her lower lumbar spine, discomfort with range of motion of the hips at extremes, and restricted range of motion at the lumbar spine. Yet, her only treatment consisted of prescribed medication—no physical therapy, chiropractic care, surgical intervention, injections, or surgical consultation. Further, she does not require an ambulatory device. The ALJ concluded that Plaintiff "has not sought the type

of treatment one would expect for an individual claiming to suffer from disabling chronic back pain." *Id.* at 58.

The ALJ also identified several treatment notes that he found inconsistent with Plaintiff's statements concerning the severity of her impairments. *See id.* at 59 ("on October 26, 2012, the claimant failed to report pain and/or stiffness in her back") (citing Exh. 6F [Doc. #5, *PageID* #s 575]); ("The claimant denied having back pain again on July 17, 2014") (citing Exh. 1F, 6F)[2]; ("On June 9, 2016, the claimant described intermittent low back pain at a 3-4 on a scale of 1-10") (citing Exh. 9F [Doc. #5, *PageID* #1057]); ("physical examination of July 28, 2016 demonstrated normal movement of all extremities") (citing Exh. 13F [Doc. #5, *PageID* #1121]); *see also* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

Plaintiff argues that the ALJ's reliance on notes from October 26, 2012 and July 17, 2014 is misplaced, as both notes are from before Plaintiff's October 2016 application date. (Doc. #6, *PageID* #1141). The Commissioner correctly points out that, although Supplemental Security Income benefits are not payable prior to the application-filing date, Plaintiff alleged her disability began in July 2006 and the ALJ reasonably

---

[2] The ALJ's summary of medical evidence from July 17, 2014 is not accurate. On that day, Plaintiff presented to Miami Valley Hospital emergency room reporting "some pain to her back, left-sided medial border of the scapula." (Doc. #5, *PageID* #393). Further, notes from the physical exam reflect further issues: "No tenderness over The midline T. or L. Spine. She does have reproducible tenderness and spasm that is palpable to the left side of the thoracic spine to the medial aspect of the left scapular border." *Id.* at 396. Ultimately, the ER doctor diagnosed thoracic spasm, chest wall pain, and anxiety. *Id.* at 397. Nonetheless, the other treatment notes identified by the ALJ constitute substantial evidence in support of his conclusion.

10

considered her complete medical history consistent with the Regulations. (Doc. #9, *PageID* #1166) (citing 20 C.F.R. § 416.335; 20 C.F.R. § 416.912(d) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary ….")).

Turning to her left-hand paresthesia, the ALJ found that Plaintiff's failure to comply with her treatment regimen and her minimal treatment were not consistent with her allegations about the severity of her symptoms. (Doc. #5, *PageID* #58). Plaintiff admitted that she does not always wear her braces when she is supposed to and stopped taking her medication. She did not attend physical therapy or pain management, she did not undergo surgical intervention or injections, and she did not seek surgical consultation. The ALJ further emphasized that Plaintiff's reports to her physicians are not consistent with her allegations. Substantial evidence supports this. *See* Doc. #5, *PageID* #s 58-59 ("on March 10, 2016, the claimant reported that her left hand paresthesias was improving" (citing Exh. 9F [Doc. #5, *PageID* #1074]); ("The claimant exhibited a strong grip strength bilaterally on December 29, 2014") (citing Exh. 3F [Doc. #5, *PageID* #448]); ("the claimant did not report weakness or numbness on October 22, 2015") (citing Exh. 9F [Doc. #5, *PageID* #1105]); ("the claimant denied weakness and numbness again on May 5, 2016") (citing Exh. 9F [Doc. #5, *PageID* #1063]).

Plaintiff insists that even if Dr. Brown is considered an examining source, "his opinion is consistent with his own treatment notes and not substantially inconsistent with the record as a whole or with the opinion of Dr. Oza—as both Dr. Brown and Dr. Oza

11

found that [Plaintiff] could not perform light exertional work." (Doc. #6, *PageID* #1141). Although Plaintiff is correct that Dr. Brown and Dr. Oza agreed Plaintiff could not perform light work, their opinions are not entirely consistent. Indeed, they reached different conclusions concerning her ability to work. Dr. Brown found that Plaintiff was "temporarily totally disabled" and "[s]he cannot perform work of any kind"; in contrast, Dr. Oza opined Plaintiff "should be able to perform sedentary work …." (Doc. #5, *PageID* #s 448, 459).

Plaintiff accurately observes that *some* of Dr. Brown's treatment notes are consistent with his opinion. However, the ALJ reasonably relied on other treatment notes that do not support and are not consistent with Dr. Brown's opinion. Dr. Brown, for example, regularly documented her back pain under "review of systems;" yet, he often noted, "normal range of motion" under physical exam. *See id.* at 1052, 1057-58, 1074-75, 1090. Further, although Dr. Brown routinely noted Plaintiff's lower back pain, he failed to provide any further explanation. Similarly, his basic medical assessment contains very little substantive explanation. When asked for the observations or medical evidence that led to her findings, he only cites "decreased [range of motion] lumbar spine on flexion." *Id.* at 458. And, "because the ALJ's opinion was supported by substantial evidence, it must be upheld, despite conflicting evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727 (6th Cir. 2013) (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012); 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4)).

ALJ Hockensmith provided good reasons for the weight he assigned Dr. Brown's opinions, and substantial evidence in the record supports those reasons. Accordingly, Plaintiff's challenge to the ALJ's assessment of Dr. Brown's opinion lacks merit.

The ALJ also assigned Dr. Oza's opinion little weight. He accurately observed the Dr. Oza was a consultative examiner. (Doc. #5, *PageID* #61); *see* 20 C.F.R. § 416.927(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."). He further found, "there is no support for a sedentary residual functional capacity." (Doc. #5, *PageID* #62); *see* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."). The ALJ explained, "The claimant did exhibit some tenderness of the lumbar spine and limited range of motion in the hips but no evidence of radiculopathy." (Doc. #5, *PageID* #62). Plaintiff moreover does not require an ambulatory aid and has sought limited treatment.

Plaintiff asserts that ALJ Hockensmith erred in his evaluation of Dr. Oza's opinion: "The ALJ failed to cite substantial evidence that is inconsistent with the opinions of … Dr. Oza." (Doc. #6, *PageID* #1141). But, as discussed above, the ALJ reasonably addressed Plaintiff's impairments and limitations in detail previously in his decision. He identified significant evidence that supports his conclusion that Plaintiff's impairments were not as severe as opined by Dr. Oza.

Turning to the State agency record-reviewing physicians, ALJ Hockensmith assigned their opinions "some weight." (Doc. #5, *PageID* #62). He found that Plaintiff

13

was "more limited than determined by these reviewers based on [her] testimony, more recent treatment records and issues with her hernia." *Id.* Plaintiff agrees that the ALJ properly acknowledged that the State agency physicians did not review the entire record. Specifically, the record-reviewing physicians did not review an October 2015 x-ray of Plaintiff's lumbar spine that revealed degenerative changes most pronounced at L4-5 with degenerative facet disease and grade 1 anterior spondylolisthesis. Plaintiff contends, "the ALJ is not qualified to interpret this raw medical data in functional terms." (Doc. #6, *PageID* #s 1141-42). Plaintiff's argument lacks merit. Importantly, "the ALJ is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Rudd*, 531 F. App'x at 728. Although no physician who provided an opinion reviewed the x-ray, a radiologist did and his report tends to confirm all of the physicians who considered Plaintiff's back problems. Thus, the x-ray results constitute substantial evidence in support of the back problems—and resulting limitations—identified by the physicians.

In summary, although Plaintiff maintains that ALJ Hockensmith should have weighed the opinion evidence differently, substantial evidence supports his consideration of those opinions. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). The substantial evidence standard presupposes that there is a zone of choice within which the decisionmaker can go either way, without interference by the courts. *Blakley*, 581 F.3d at 406. The ALJ's findings that Dr. Brown's and Dr. Oza's opinions merited little weight and the record-reviewing physicians' opinions merited some weight was within the zone of reasonable choices.

B.  Obesity

Plaintiff asserts that ALJ Hockensmith failed to adequately consider Plaintiff's obesity as required by Social Security Ruling 02-1p and Sixth Circuit caselaw. (Doc. #6, *PageID* #s 1142-44). Obesity, as defined in Social Security Ruling 02-1p, "is a complex, chronic disease characterized by excessive accumulation of body fat." 2002 WL 34686281, *2 (Soc. Sec. Admin. Sept. 12, 2002). The National Institutes of Health's Clinical Guidelines classify an overweight or obese individual based on that person's Body Mass Index (BMI). *Id.* An adult with a BMI of 30.0 or above is considered "obese." *Id*. "Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems." *Id.* at *3. It "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems." *Id.* It "may also cause or contribute to mental impairments such as depression." *Id.*

To account for these increased risks, Social Security Ruling 02-1p requires an ALJ to "consider obesity in determining whether: [1] The individual has a medically determinable impairment ....; [2] The individual's impairment(s) is severe ....; [3] The individual's impairment(s) meets or equals the requirements of a listed impairment in the listings ....; and [4] The individual's impairment(s) prevents him or her from doing past relevant work and other work that exists in significant numbers in the national economy...." *Id*.

Although it is clear that an ALJ must consider a claimant's obesity, it is less apparent how an ALJ's decision should reflect such consideration. "Social Security

Ruling 02–01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations. It is a mischaracterization to suggest that Social Security Ruling 02-1p offers any particular procedural mode of analysis for obese disability claimants." *Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006); *see Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 835 (6th Cir. 2016); *Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (6th Cir. 2015) (We also have recognized that an ALJ must 'consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation.'") (quoting *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009)).

Some courts have found that Social Security Ruling 02-1p is "more than a requirement that the ALJ mention the fact of obesity in passing," *Norman v. Astrue*, 694 F. Supp.2d 738, 741 (N.D. Ohio 2010) (citations omitted), but others have found, "Where an ALJ has acknowledged the issue, even a cursory reference to obesity may suffice if there is no evidence that it causes any limitations." *Bornstein v. Comm'r of Soc. Sec.,* No. 1:17cv220, 2018 WL 3448604, *4 (S.D. Ohio June 20, 2018) (Bowman, M.J.), *report and recommendation adopted*, 2018 WL 3439632 (S.D. Ohio July 17, 2018) (Dlott, D.J.).

In the present case, ALJ Hockensmith considered Plaintiff's obesity throughout his decision. He first identified obesity as one of Plaintiff's severe impairments: "the claimant is overweight at a height of 60 inches and a weight of 204 pounds. With a body mass index of 39.8 at minimum, the claimant is considered obese, and that condition

could be expected to aggravate the claimant's other conditions. This impairment affects the claimant's ability to do basic work-related functions." (Doc. #5, *PageID* #54). The ALJ recognized at Step Two that although there is no listing for obesity, obesity may be disabling and can dramatically worsen other medical conditions. Further, the ALJ considered whether Plaintiff's "obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.02A of the listings …." *Id.* at 55-56 (quoting Soc. Sec. R. 02-1p, *5). He concluded, "[t]he record … does not document a finding that the claimant was unable to ambulate effectively at any material time." *Id.* at 56. Last, in assessing Plaintiff's RFC, the ALJ considered "the exacerbating affect [Plaintiff's] obesity has on her lumbar condition and asthma." *Id.* at 59.

Together, ALJ Hockensmith's consideration of Plaintiff's obesity extends beyond a passing reference. Further, as correctly observed by the Commissioner, "The Agency recognizes that a claimant's obesity *may* create greater limitations in combination with her other impairments than would exist by virtue of those other impairments alone. However, Plaintiff does not cite any evidence demonstrating that her obesity *actually* caused additional limitations or further impaired her ability to work." (Doc. #9, *PageID* #1170) (internal citation omitted) (emphasis in original); *see Bornstein,* 2018 WL 3448604, *3 ("Plaintiff ultimately is responsible for proving that her obesity caused further limitation."). Moreover, Plaintiff provides no support for speculating that "any further reduction in her residual functional ability due to her obesity would be tantamount to finding a limitation to sedentary work, which would direct a finding of disability at Bowen's age." (Doc. #6, *PageID* #1144).

Accordingly, for these reasons, Plaintiff's challenge to the ALJ's evaluation of her obesity lacks merit.

## IT IS THEREFORE RECOMMENDED THAT:

1. The ALJ's non-disability decision be affirmed; and

2. The case be terminated on the Court's docket.

May 6, 2019                                *s/Sharon L. Ovington*
                                                             Sharon L. Ovington
                                                             United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).